UNITED STATES DISTRICT COURT                                ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

DEMETRIOS BEKAS,

                          Plaintiff,

      - versus -

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                          Defendant.

MEMORANDUM
AND ORDER
13-CV-6393

A P P E A R A N C E S:

    DEMETRIOS BEKAS
        16-48 201 Street
        Bayside, NY 11360
        *Plaintiff pro se*

    LORETTA E. LYNCH
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, NY 11201
    By:    James R. Cho, Assistant U.S. Attorney
            Amanda Katlowitz, student intern
        *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Demetrios Bekas, representing himself, seeks review of the Social Security Administration's decision denying him disability benefits. Bekas alleges that he can no longer work because a progressive neuropathy has interfered with his ability to walk, balance, and use his extremities. An administrative law judge ("ALJ") found that the evidence did not show that Bekas was disabled by late 2003, the date when he was last eligible for Social Security disability benefits. Because I find that the ALJ's decision is not supported by substantial evidence and rests on an incomplete record, the Commissioner's motion for judgment on the pleadings is

denied, and Bekas's is granted to the extent that the case is remanded for further proceedings consistent with this opinion.

BACKGROUND

A.  *Medical Background*

Bekas, a college graduate, worked as an executive for a women's fashion company from the 1980s until December 2002, when it went out of business. R. 21-22.[1] He was paid about $52,000 a year for his work in 1996 and 2001-2002, but he reported no income for the years 1997 to 2000, inclusive. R. 58. Although Bekas's wage history indicates that he earned almost $52,000 in 2009 as well, the ALJ found that this was not substantial gainful activity under the law. *See* R. 11. Other than in 2009, he has not reported income since 2002. R. 58.

Bekas alleges that he became disabled starting in April 16, 2002, which corresponds to a visit to his primary care physician, Dr. Plokamakis. *See* R. 144-47. Bekas complained of spine pain, numbness, swollen hands, and dizziness; Dr. Plokamakis diagnosed neuropathy and ordered some follow-up tests, but did not prescribe medication or other treatment at that time. R. 144.

In a second treatment note dated February 7, 2003, Dr. Plokamakis wrote that Bekas complained of numbness, dizziness, and back pain. R. 224. He diagnosed neuropathy and dizziness or vertigo and recommended that Bekas see a neurologist.

Bekas provided the ALJ few relevant medical records for any year until 2008. Some of the 2008 records were only provided to the Appeals Council (and were not before the ALJ), including a note from Dr. Plokamakis and two clinical studies.

---

[1] Citations of the form "R." are to the administrative record, filed as ECF No. 12.

In January 2008, Dr. Plokamakis wrote a letter stating that Bekas had severe neuropathy "as documented by neurologists at Montefiore Hospital." R. 226. The note stated that Bekas had trouble balancing, could not go up and down stairs, and due to numbness in his legs had to walk and sit down every ten to fifteen minutes. *Id*.

In July of 2008, Bekas saw a neurologist, Dr. Itzhak Haimovic, who performed a nerve conduction study. R. 307-12. Dr. Haimovic recommended a follow-up skin biopsy, which was performed in September 2008. R. 295-96. That testing showed "significantly reduced epidermal nerve fiber density, consistent with small-fiber neuropathy." R. 295. Neither of these reports was in the ALJ's record.

The ALJ's record did, however, include another neurologist's evaluation, from November 2008. Specifically, Bekas saw Dr. Michael Swerdlow for evaluation of progressive neuropathy over the previous two years. R. 182-83. Dr. Swerdlow stated that Bekas had previously had pain in his right toe and right knee, but that the pain spread to involve his left foot. The pain had also spread to the fourth and fifth fingers of his left hand, with shock-like pains. In addition, Bekas had experienced progressive loss of balance over the previous three months. Clinical testing of Bekas's reflexes and sensation showed "profound loss of position sense" in Bekas's lower limbs below the knee, lack of reflexes in the knees and ankles, and decreased sensation (including touch and pin sense) in his lower and upper extremities, though the doctor believed his strength was intact. Bekas also displayed ataxia when walking. Dr. Swerdlow summarized his findings by stating that Bekas had a "striking picture of an asymmetrical predominantly sensory neuropathy." He was uncertain of the cause. R. 183. Dr. Swerdlow admitted Bekas to Montefiore Medical Center in the Bronx for inpatient diagnostics and treatment. *See* R. 183; R. 154-81 (November 2008 inpatient records).

3

Subsequent evaluation, including an epidermal nerve fiber density study performed in September 2008 and signed by Dr. David Laks, R. 295-96, a nerve conduction test administered by Dr. Ian Stein in mid-2011, R. 201-09, and a nerve biopsy referred to by Dr. Plokamakis in a December 2010 letter, R. 143, also demonstrated that Bekas had a serious neuropathy. Dr. Stein also wrote a letter, dated October 10, 2012, in which he opined that Bekas's neuropathy completely prevented him from working. R. 231-32. (This letter was also not before the ALJ.)

B. *Bekas's Daily Activities*

Bekas provided a written function report dated October 24, 2011, and he also testified before the ALJ at a May 22, 2012 hearing. In his written statement, Bekas reported numbness in his legs and left hand. He helped care for a dog, but said he was not able to run a business; he could not lift objects, bend down, kneel, or squat; could not drive or perform household chores; and could not dress himself. R. 77-78. He could walk up to two blocks with a cane, but he could stand only for five to ten minutes, and could only sit for one to two hours without needing to stretch or lie down. He handled his finances and socialized, and he had no difficulty paying attention, following instructions, or getting along with people.

At the hearing, Bekas stated that he had had intermittent numbness in both of his feet and his left hand beginning in 2002. R. 28. The numbness came several times a day and lasted for an hour or an hour and a half. His symptoms interfered with his ability to work by making him dizzy or vertiginous, and by preventing him from lifting things or from driving. R. 29. He also had difficulty balancing. R. 32.

C. *Procedural History*

Bekas protectively filed an application for disability insurance on September 13, 2011; he claimed that he had been disabled beginning April 16, 2002. After the application was initially denied, Bekas had a hearing before the ALJ on May 22, 2012. The ALJ's September 25, 2012 opinion denied Bekas's claim primarily because the ALJ found that Bekas had not shown he was disabled by his date last insured, which was in December 2003. Bekas compiled additional evidence of his disability and sought, but was denied, an appeal before the agency's Appeals Council. He filed this action on November 6, 2013.[2] I heard argument on June 20, 2014.

## DISCUSSION

A. *The Legal Standards*

A claimant seeking disability insurance benefits must establish that, "by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months," 42 U.S.C. § 1382c(a)(3)(A), she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," *id.* § 1382c(a)(3)(B).

The Social Security regulations direct a five-step analysis for the Commissioner to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an

---

[2] Bekas initially filed the case in the Southern District of New York as No. 13-cv-7891, but it was transferred to this district on November 18, 2013, since Bekas resides in Queens. *See* ECF No. 6.

> impairment, the [Commissioner] will consider him disabled
> without considering vocational factors such as age, education, and
> work experience; the [Commissioner] presumes that a claimant
> who is afflicted with a "listed" impairment is unable to perform
> substantial gainful activity. Assuming the claimant does not have
> a listed impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, he has the residual functional
> capacity to perform past work. Finally, if the claimant is unable to
> perform his past work, the [Commissioner] then determines
> whether there is other work which the claimant could perform.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (internal quotation marks omitted) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(v) (setting forth this process). The claimant bears the burden of proof in the first four steps, the Commissioner in the last (but only to show that jobs exist in the national or local economies that the claimant can perform given her RFC and vocational factors). *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003).

The Commissioner decides whether the claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1527(e)(1). Under 42 U.S.C. § 405(g), I review the Commissioner's decision to determine whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). If the record contains evidence which "a reasonable mind might accept as adequate to support [the Commissioner's] conclusion," this Court may not "substitute its own judgment for that of the [Commissioner] even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quotation marks omitted).

B.  *Bekas's Pro Se Status*

Both before the agency and now in this court, Bekas has elected to represent himself, without the benefit of an attorney. Bekas's pro se status affects how I assess whether the agency complied with its legal obligations and how I construe his pleadings before me.

When an Article III court reviews proceedings from a pro se Social Security petitioner, it

> must first satisfy [itself] that the claimant has had a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act. The need for this inquiry arises from the essentially non-adversarial nature of a benefits proceeding: the Secretary is not represented, and the ALJ, unlike a judge in a trial, must himself affirmatively develop the record. Where, as here, the claimant is unrepresented by counsel, the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. A reviewing court must determine whether the ALJ adequately protected the rights of a pro se litigant by ensuring that all of the relevant facts are sufficiently developed and considered.

*Echevarria v. Secretary of Health and Human Services*, 685 F.2d 751, 755 (2d Cir. 1982) (internal citations, quotation marks, and alterations omitted).

Furthermore, I must read Bekas's pleadings in this court generously: "A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. Accordingly, the court interprets the complaint to raise the strongest arguments that it suggests." *DeJesus v. Colvin*, 11-CV-5864 DLI, 2013 WL 5532700, at *1 (E.D.N.Y. Sept. 30, 2013) (internal quotation marks, citations, and alterations omitted).

C.      *Application*

Although Bekas is not a lawyer, his papers are clear, and the main argument he raises now simply responds to the basis for the ALJ's adverse decision below: that the ALJ erred in weighing the evidence of the onset date of Bekas's disability. Because I agree with that

7

argument, I address it first, and I will leave for brief consideration at the end the remaining arguments.

There is no dispute that Bekas's date last insured is December 31, 2003. *See* Bekas Mot. ¶ 6, ECF No. 14 (citing R. 11). The ALJ's decision holds that Bekas did not show that he was incapable of working by that date. *See* R. 12-15. Surprisingly, however, the ALJ's decision also seems to call into question whether Bekas was unable to work even at a later date (*i.e.*, around the time of Bekas's 2012 hearing). Specifically, the decision states:

> While it is reasonable to find that the claimant's alleged impairments would preclude more than the full range of work, the objective evidence does not establish that the claimant would be precluded from all work activity. The claimant is fully capable of performing at the very least the full range of sedentary work. He is able to ambulate, stand, sit 6 out of an 8 hour work day, lift/carry 5Lbs frequently, and 10Lbs occasionally, he can bend, kneel, squat and has no difficulty with gross and fine manipulation and has no non-exertional impairments.

R. 14. These findings, phrased in the present tense, are at odds with the medical evidence documenting the plaintiff's physical condition at the time of the 2012 hearing. About a month after the ALJ's September 25, 2012 written decision, Bekas obtained a letter from Dr. Stein, the neurologist, who wrote that the ALJ's findings about Bekas's limitations and capabilities were "not supported by any medical objective finding." R. 232. And indeed the ALJ himself stated during the May 22 hearing that

> [T]here's no question that the record reflects that you have a severe disability. I don't have any problem with that. The difficulty I'm having, sir, is the year of 2002 and 2003. That's my only problem.

R. 32.

It is thus possible that the ALJ's use of the present tense in his written decision was inadvertent. But, as Bekas points out, his disability claim is premised on a progressive,

8

degenerative condition. Bekas's current impairments, and the history of the development of his symptoms, are relevant to findings about his condition in 2002 and 2003. In other words, the ALJ's potential oversight is logically encompassed by Bekas's primary argument.

Bekas extensively cites Social Security Rule 83-20, which sets standards for determining onset of disability and is "binding on all Social Security Administration decision-makers." *Gibson v. Astrue*, No. 07-CV-2845, 2009 WL 1181251, at *2 (S.D.N.Y. Apr. 30, 2009) (internal citations quotation marks and brackets omitted). The rule devotes special attention to cases, such as Bekas's, in which precise evidence of onset is not available, and the onset date must be inferred. Because of the importance of these provisions, I quote at length:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
>
> . . . How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.
>
> If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition. . . . The impact of lay evidence on the decision of onset will be limited to the degree it is not contrary to the medical evidence of record.

9

SSR 83-20, 1983 WL 31249, at *2-3.

Although the Secretary argues to the contrary, the ALJ did not follow these directives. The Secretary contends that the ALJ was not required to call a medical expert or obtain lay testimony from friends or family members because the ALJ permissibly found that no medical evidence from prior to 2008 (or at the earliest, 2007) supports a finding of disability. Thus, the ALJ had a "five year margin of error" in making the findings about 2008. Def.'s Reply at 4. But in the context of a progressive medical condition with no readily ascertainable onset date, that sort of guesswork – even with a large margin of error – will not do. Put another way, because of the nature of Bekas's condition, the ALJ could not conclude without expert advice that Bekas was not disabled and therefore not obtain expert advice. Instead, expert advice was necessary to determine whether he was disabled. A medical expert would be able to shed light on, for example, the question whether the absence of medical evidence from the 2003 to 2007 period is consistent with a seriously debilitating condition, and whether it is medically possible to infer Bekas's 2003 condition from the existing medical records.

Furthermore, there may be additional evidence for the ALJ to develop on remand. The existence of that additional evidence is suggested by the materials Bekas submitted to the Appeals Council after the ALJ's denial.[3] First, Dr. Stein's October 2012 letter refers to records from other medical sources, including Drs. Latov, Maccabee, Karides, and Herskovits, which purportedly "span[] a period from 2002 to 2010." *See* R. 231. Very little evidence from these sources otherwise appears in the record, even though Dr. Stein apparently relies on it. Second,

---

[3] The additional evidence is both probative on its own, and suggests the possibility of further evidence that might bear on the decision. It therefore meets the relevant standard for new evidence submitted to the Appeals Council. *See Fox v. Barnhart*, 137 F. App'x 395, 396 (2d Cir. 2005) (unpublished) ("Additional evidence submitted after an ALJ's determination must be both relevant to the claimant's condition during the time period for which benefits were denied, and present a reasonable possibility that [it] would have influenced the [ALJ] to decide the claimant's application differently.") (internal quotation marks omitted).

the ALJ developed little evidence from lay sources. Following the ALJ's order, Bekas submitted a declaration from his wife, who stated that "[b]y January 2003, the episodes crescendo to the level that he was forced to quit of all work activities because of the excruciating pains and numbness in his legs." R. 322. Testimony about Bekas's condition between 2002 and 2008 from the claimant's family members and friends could, as Rule 83-20 suggests, be helpful "to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition." Indeed, wherever the record is incomplete, obtaining additional testimony is the ALJ's duty: "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks and alterations omitted).

I do not mean to suggest that the agency will face an easy task on remand, and it is not at all clear to me that Bekas will be able to demonstrate disability during the relevant time period. An absence of medical treatment can certainly be probative of a condition's seriousness. *See, e.g., Armone v. Bown*, 882 F.2d 34, 39 (2d Cir. 1989). I also acknowledge that Bekas's explanation of his earning history was less than convincing. However, given Bekas's present condition, the difficulty of assessing the subjective component of his symptoms, and the evidentiary deficiencies discussed above, remand for further proceedings is appropriate here.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied, and Bekas's motion is granted to the extent that the case is remanded for further proceedings consistent with this opinion.

So ordered.

John Gleeson, U.S.D.J.

Dated: June 23, 2014
       Brooklyn, New York